## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE TOWNE MORTGAGE COMPANY DATA SECURITY INCIDENT LITIGATION | Case No. 25-cv-13677<br><br>HON. BRANDY R. MCMILLION<br><br>**ORAL ARGUMENT REQUESTED** |

## TOWNE MORTGAGE COMPANY'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Towne Mortgage Company ("**Towne**"), through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), and Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss the Class Action Complaint (the "**Complaint**") filed by Plaintiffs Sheri Shelton, Thomas Stucky, Benjamin Powers, Gregg Richardson, Terecos Cromer, Donald Ferguson, Mohand Mermeche, Toby Sessoms, Brian Barnette, and Eugene Sikora (collectively "**Plaintiffs**"). The grounds for this Motion are set forth in the attached Brief in Support. Pursuant to L.R. 7.1(a), Towne's counsel sought, but was denied, concurrence to this Motion.

WHEREFORE, Defendant Towne Mortgage Company respectfully requests this Court enter an Order: (A) dismissing Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing; (B) dismissing Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed. R.

1

Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted; and

(C) awarding Towne Mortgage Company such other and further relief as is

appropriate.

Dated: March 13, 2026,                  Respectfully Submitted,

                                         */s/ Timothy J. Lowe*

                                         Timothy J. Lowe (P68669)

                                         Mitchell A. Capp (P84197)

                                         McDonald Hopkins PLC

                                         39533 Woodward Avenue, Suite 318

                                         Bloomfield Hills, Michigan 48304

                                         tlowe@mcdonaldhopkins.com

                                         mcapp@mcdonaldhopkins.com

                                         *Counsel for Towne Mortgage Company*

37721748.1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ) | |
| IN RE TOWNE MORTGAGE ) | Case No. 25-cv-13677 |
| COMPANY DATA SECURITY ) | |
| INCIDENT LITIGATION ) | HON. BRANDY R. MCMILLION |
| ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| ) | |

**BRIEF IN SUPPORT OF**
**TOWNE MORTGAGE COMPANY'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

37721748.1

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.............................................................................iii-vi

STATEMENT OF THE ISSUES PRESENTED................................................ vii

I.      INTRODUCTION ................................................................................. 1

II.     PLAINTIFF'S ALLEGATIONS............................................................ 2

III.    LEGAL STANDARD............................................................................ 4

        A.      Fed. R. Civ. P. 12(b)(1).............................................................. 4

        B.      Fed. R. Civ. P. 12(b)(6).............................................................. 4

IV.     ARGUMENT.......................................................................................... 5

        A.      Plaintiffs Lack Article III Standing to Bring Suit Against
                Towne ........................................................................................... 5

                1.      Plaintiff Ferguson Was Not Impacted By the
                        Cyberattack ................................................................... 10

                2.      Plaintiff Sikora's Alleged Injury Occurred Before
                        The Cyberattack ............................................................ 10

                3.      Plaintiffs Stucky, Powers, Richardson, Mermeche,
                        Sessions, and Barnette Fail to Allege Actual Injury ...........11

        B.      Count I:  Plaintiffs' Negligence Claims Fail Because
                Plaintiffs Do Not Allege Actual Injury or Legally
                Cognizable Damages.................................................................. 13

        C.      Count II:  Plaintiffs' Breach of Implied Contract Claim is
                Unavailing .................................................................................. 20

        D.      Count III:  Plaintiffs' Unjust Enrichment Claim Fails
                Because Plaintiffs Do Not Allege They Directly Conferred
                A Benefit on Towne..................................................................... 22

i

E.      Count IV:  Plaintiffs Fail to Allege Breach of Fiduciary Duty .... 23

F.      Plaintiffs Shelton's and Richardson's CCPA Claims Are
        Insufficient...................................................................................... 24

37721748.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Accellion, Inc. Data Breach Litig.,*
  713 F. Supp. 3d 623, 640 (N.D. Cal. 2024) *reconsideration denied,*
  No. 21-CV-01155-EJD, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024)...... 25

*Ass'n of Am. Physicians & Surgeons v. U.S. Food and Drug Admin.,*
  13 F.4th 531, 547 (6th Cir. 2021) .................................................................. 6

*Bank of Am., N.A. v. First Am. Title Ins. Co.,*
  499 Mich 74, 100 (2016) ............................................................................ 21

*Barclae v. Zarb,*
  300 Mich App 455, 471 (2013) .................................................................. 21

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955 (2007)........................................................... 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 570 (2007)............................................................................ 20

*Belle Isle Grill Corp. v. City of Detroit,*
  256 Mich. App. 463, 478 (2003) ............................................................... 21

*Bohnak v. Marsh & McLennan Companies, Inc.*
  79 F.4th 276, 286 (2d. Cir. 2023) ................................................................ 8

*Bucholz v. Meyer Njus Tanick, PA,*
  946 F. 3d 855, 861 (6th Cir. 2020) .......................................................... 4, 8

*Calhoun Cnty v. Blue Cross Blue Shield Mich.,*
  297 Mich App 1, 20 (2012) ....................................................................... 23

*Canterbury v. Corewell Health,*
  No. 24-00189-NZ (Cir. Ct of Kent Cnty June 11, 2024) ..................... 16, 20

iii

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398, 414 & n. 5 (2013) ................................................ 6, 7, 8, 12, 13

*Craig v. Oakwood Hosp.,*
  471 Mich. 67, 86-87 (2004) .......................................................... 17, 18, 19

*Doe v. Henry Ford Health Sys.,*
  308 Mich App 592, 600 (2014) ................................................ 13, 14, 17, 20

*Garland v. Orlans, PC,*
  999 F.3d 432, 436 (6th Cir. 2021) ................................................................ 12

*Henry v. Dow Chem. Co.,*
  473 Mich 63, 72 (2005) ...................................................... 13, 14, 16, 17, 20

*Highfield Beach at Lake Mich. V. Sanderson,*
  331 Mich app 636, 666 (2020) .................................................................... 23

*In re Bank of Am. Cal. Unemployment Benefits Litig.,*
  674 F. Supp. 3d 884, 916 (S.D. Cal. 2023) ................................................. 25

*In re Est. of Karmey,*
  468 Mich. 68, 75 (2003) .............................................................................. 24

*In re Grede Holdings LLC Data Breach Litigation,*
  Case No.: 25-cv-10831 (E.D. Mich. February 12, 2026) .......... 17, 20, 21, 22

*In re Practicefirst Data Breach Litigation,*
  No. 121CV00790JLSMJR, 2022 WL 354544, at *8
  (W.D.N.Y. Feb. 2, 2022) .............................................................................. 6

*Landstar Express Am., Inc. v. Nexteer Auto Corp.,*
  319 Mich App 192, 205 (2017) ........................................................ 22, 22, 23

*Legg v. Leaders Life Ins. Co.,*
  5474 F. Supp 3d 985, 994 (W.D. Okla. 2021).............................................. 7

*Lochridge v. Quality Temp. Servs., Inc.,*
  No. 22-12086, 2023 WL 4303577, at *4 n.2
  (E.D. Mich. June 30, 2023)......................................................................... 10

iv

*Lochridge v. Quality Temporary Services, Inc.,*
    2023 WL 430577 at *7 (E.D. Mich. 2023)............................................... 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 561 (1992)............................................................................. 5

*Lund v. Travelers Indem. Co. of Am.,*
    2016 WL 7601903 at *7 (Mich. Ct. App. Dec. 29, 2016).......................... 19

*Maag v. U.S. Bank, Nat'l Ass'n,*
    No. 21-cv-00031-H-LL, 2021 WL 5605278, at *2
    (W.D. Cal. Apr. 8, 2021) ............................................................................ 25

*McMorris v. Carlos Lopez & Associates, LLC*
    995 F.3d 295, 303 (2d. Cir. 2021) ............................................................... 9

*Miller v. Curries,*
    50 F.3d 373, 377 (6th Cir.) .......................................................................... 5

*Morris Pumps v. Centerline Piping, Inc.,*
    273 Mich App 187, 195 (2006) .................................................................. 22

*Nyman v. Thomson Reuters Holdings, Inc.,*
    329 Mich App 539 553-54 (2019) ........................................................ 14, 20

*Pisciotta v. Old Nat. Bancorp.*
    499 F.3d 629, 639 (7th Cir. 2007) ............................................................... 7

*Polkowski v. Jack Doheny Companies, Inc.,*
    No. 2:25-cv-10516, 2025 WL 3079358
    (E.D. Mich. Nov. 4, 2025) ........................................... 16, 17, 20, 21, 22, 23

*Rakyta v. Munson Healthcare,*
    No. 354831, 2021 WL 4808339 (Mich Ct App Oct. 14, 2021) ........... 15, 20

*Ramirez v. TransUnion LLC,*
    951 F.3d 1008, 1040 (9th Cir. 2020) ........................................................... 8

v

*Rand v. Travelers Indemnity Company,*
 637 F. Supp.3d 55, 66 (S.D.N.Y. 2022) .......................................................... 9

*Rippy v. Hattaway*,
 270 F.3d 416, 419 (6th Cir. 2001) .................................................................. 4

*Ray v. Swager,*
 501 Mich. 52, 63 (2017) ................................................................................ 18

*Rodriguez v. CRG Lynwood LLC,*
 No. 24-111576, 2025 WL 2700614
 (E.D. Mich. Sept. 22, 2025)........................................................... 9, 10, 17, 20

*Saker v. Cherry St. Servs., Inc. d/b/a Cherry Health,*
 No. 24-01489-CZ (Cir Ct of Kent Cnty October 4, 2024) ................... 16, 20

*Spokeo, Inc. v. Robins,*
 578 U.S. 330, 338 (2016).......................................................................... 4, 5, 6

*Susan B. Anthony List v. Driehaus,*
 573 U.S. 149, 158 (2014).............................................................................. 6, 8

*TransUnion LLC v. Ramirez,*
 594 U.S. 413, 423 (2021)........................................................................... 6, 7, 8

*Tumminello v. Father Ryan High Sch., Inc.,*
 678 F. App'x 281, 288 (6th Cir. 2017) ......................................................... 18

*Udo v. Wells Fargo Bank, N.A.,*
 No. 23-cv-02935-J SW, 2023 (WL 8600791, at *3
 (N.D. Cal. Dec. 12, 2023) ............................................................................. 25

*Warth v. Seldin,*
 422 U.S. 490, 498 (1975)................................................................................. 5

## Rules

Fed. R. Civ. P. 12(b)(1)....................................................................... 1, 4, 6, 13

Fed. R. Civ. P. 12(b)(6)....................................................................... 2, 4, 5, 13

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.      Whether Plaintiffs' (*excluding* Shelton and Cromer) Complaint must be dismissed for lacking Article III standing where Plaintiffs have failed to establish a concrete and particularized injury in fact that is fairly traceable to Towne, and Plaintiffs' allegations are based merely on fear of potential and speculative future harm?

Towne answers: Yes.

This Court should answer: Yes.

2.      Whether Plaintiffs' (all named-Plaintiffs) Complaint should be dismissed in its entirety against Towne when Plaintiffs have failed to establish the *prima facie* elements of their claims against Towne under Count I – negligence, Count II – breach of implied contract, Count III – unjust enrichment, Count IV – breach of fiduciary duty, and Count V –violation of the California Consumer Privacy Act?

Towne answers: Yes.

This Court should answer: Yes.

37721748.1

## I.   **INTRODUCTION**

Defendant Towne Mortgage Company ("**Towne**") was the target of a cyberattack by an unknown bad actor on or around June 7, 2025 (the "**Cyberattack**"). Plaintiffs Sheri Shelton, Thomas Stucky, Benjamin Powers, Gregg Richardson, Terecos Cromer, Donald Ferguson, Mohand Mermeche, Toby Sessoms, Brian Barnette, and Eugene Sikora (collectively "**Plaintiffs**") believe their personal information was stolen by unknown third parties as a result of the Cyberattack. Plaintiffs assert five causes of action against Towne, including: (1) negligence (Count I); (2) breach of implied contract (Count II); (3) unjust enrichment, (Count III); (4) breach of fiduciary duty (Count IV); and (5) violation of the California Consumer Privacy Act (Count V).

At the outset, Michigan state and federal courts have flatly rejected the precise theories advanced by Plaintiffs in this case. Indeed, as a threshold matter, Plaintiffs Stucky, Powers, Richardson, Ferguson, Mermeche, Sessoms, Barnette, and Sikora lack standing to sue Towne because they have not alleged a concrete, particularized, actual or imminent injury. Plaintiffs' alleged risk of future identity theft is simply too speculative to support Article III standing. Accordingly, Plaintiffs' Complaint should be dismissed under Rule 12(b)(1). Furthermore, even if Plaintiffs could establish standing to overcome Rule 12(b)(1) (which they cannot), Plaintiffs' Complaint does not establish the *prima facie* elements of their claims under Rule

1

12(b)(6) and fails under well-established Michigan substantive law. As the Michigan Court of Appeals has affirmed, Plaintiffs cannot base their claims on fears of potential *future* harm. Nor do Plaintiffs have a claim simply because they have allegedly taken prophylactic measures to ameliorate the risk of that speculative potential harm. Present damages derivative of a possible future injury do not constitute an actual, present injury. Instead, Plaintiffs must allege that they suffered actual, *present* injury – which they have not done.

Ultimately, even if Plaintiffs could allege an actionable present injury, their claims fail on other grounds. Specifically, the breach of contract claim fails because Plaintiffs allege no independent consideration. The unjust enrichment claim fails because there is no contention that Towne retained an independent benefit directly conferred by Plaintiffs, and Plaintiffs' allegations do not establish inequity or injustice; and the breach of fiduciary duty and violation of California's Consumer Privacy Act claims have no basis in law or fact. For these reasons, Towne respectfully requests the Court grant this Motion and dismiss Plaintiffs' Class Action Complaint (the "**Complaint**").

## II.    **PLAINTIFF'S ALLEGATIONS**

Towne is full-service mortgage lender based in Troy, Michigan. (ECF No. 18 at PageID.187 ¶ 3). Plaintiffs allege they are current and former customers of Towne. (*Id*. at PageID. 187 ¶ 4). Plaintiffs allege that on June 7, 2025, a cyberattack targeted

Towne's network that contained personally identifiable information ("PII") of Plaintiffs and other individuals. (*Id*. at PageID. 187 ¶ 2). Plaintiffs allege that because of the Cyberattack they have taken preventative measures like researching the Cyberattack, reviewing financial accounts, monitoring credit reports, changing passwords, and filing police reports, which may take years to discover. (*Id*. at PageID.214 ¶ 108, PageID.217 ¶ 124, PageID.220 ¶ 140, PageID.223 ¶ 157, PageID.226 ¶ 175, PageID.230 ¶ 192, PageID.233 ¶ 208, PageID.236 ¶ 224, PageID.239 ¶ 241, PageID.243 ¶ 259, and PageID.253 ¶ 292). Plaintiffs allege that they have sustained injuries in the form of: (a) invasion of privacy; (b) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of the benefit of the bargain with Defendant; (h) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; and (i) the continued risk to their sensitive Private Information. (*Id*. at PageID.245 ¶ 267).

Aside from these conclusory allegations, four Plaintiffs attempt to allege more.  Plaintiff Shelton claims that "an unauthorized third-party made a charge for over $1,000 on her Central State Credit Union account." (*Id*. at PageID. 213-214 ¶

107). Plaintiff Cromer claims an "unauthorized third-party opened a bank account at New Jersey Affinity Federal Credit in her name," and that "an unauthorized third-party attempted to open a Sam's Club credit line in her name." (*Id*. at PageID. 226 ¶ 107). Plaintiff Ferguson claims "an unauthorized third-party made a transaction on his bank account" and that he submitted a dispute over the charge with his bank and has since been issued a new debit card. (*Id*. at PageID. 229-230 ¶ 191). Lastly, Plaintiff Sikora claims he made a $1,200 payment to an individual claiming to be a Towne Mortgage employee in June 2025. (*Id*. at PageID. 242 ¶ 257).

### III.   LEGAL STANDARD

#### A.   Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t the pleadings stage, the plaintiff must allege facts demonstrating each element" of standing. *Bucholz v. Meyer Njus Tanick, PA*, 946 F. 3d 855, 861 (6th Cir. 2020).

#### B.   Fed R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing a Rule 12(b)(6) motion, the court accepts the

plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) (internal citations and punctuation omitted). Stated differently, a complaint must allege facts that "state a claim to relief that is plausible on its face. "*Twombly*, at 570. A court may dismiss a complaint under Rule 12(b)(6) where the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Miller v. Curries*, 50 F.3d 373, 377 (6th Cir. 1995).

## IV. <u>ARGUMENT</u>

### A. **Plaintiffs Lack Article III Standing to Bring Suit Against Towne.**

The "threshold question in every federal case" is whether the Plaintiff has standing to sue. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy Article III's standing requirements, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [Towne], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560). <u>The Article III standing analysis must proceed plaintiff-by-plaintiff, claim-by-claim, defendant-by-defendant. *See e.g.,*</u>

*Ass'n of Am. Physicians & Surgeons v. U.S. Food and Drug Admin.*, 13 F.4th 531, 547 (6th Cir. 2021) (emphasis added).

An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An injury is "concrete" when it is "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340 (citation omitted). "[T]hat is, it must actually exist." *Id*. And the need for "actual or imminent" injury bars "'conjectural or hypothetical'" harms. *Id*. (citation omitted). Threatened future harm is "imminent" only when it is "certainly impending" or there is a "'substantial risk'" it will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013)). Allegations of "possible" future harms "are not sufficient." *Clapper*, 568 U.S. at 409.

Following the United States Supreme Court's decision in *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021), federal courts are increasingly skeptical of standing in data breach litigation. For example, in *In re Practicefirst Data Breach Litigation*, No. 121CV00790JLSMJR, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (attached as **Exhibit B**), the Western District of New York found that plaintiffs lacked standing and therefore granted a motion to dismiss under Rule 12(b)(1). In doing so, the court explained the difficulty data breach plaintiffs face in establishing standing:

> *Clapper*, *TransUnion*, and *Maddox* instruct that to establish standing in
> a suit for damages, a plaintiff must allege both a risk of future harm that

> is 'actual and imminent' or 'certainly impending' as well as a separate, concrete harm that was caused by exposure to the imminent risk and is proportional to the actual likelihood of the future harm occurring.

*Id*. at *4.

In data breach cases, more than significant speculation must occur to find standing where a plaintiff alleges injury based on an increased threat or increased risk of identity theft. As one federal court explained:

> [I]dentity theft or fraud will only occur if unknown third parties undertake a series of acts, including the comprehension and organization of the stolen data, the posting of the data for sale, the consummation of a transaction, and then the actual use of the data to make unauthorized purchases or open fraudulent accounts. A future risk of injury that relies on this sort of "speculation about the decisions of independent actors" is not sufficient to establish a concrete injury.

*Legg v. Leaders Life Ins. Co*., 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) (quoting *Clapper*, 568 U.S. at 414).

Other courts have consistently rejected the idea that an increased risk of identity theft in the future is a viable theory of damages. *See, e.g.,McNeil v. Best Buy Co., Inc.*, No. 4:13CV1742 JCH, 2014 WL 1316935, at *4 (E.D. Mo. Apr. 2, 2014); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (collecting cases). And in *TransUnion LLC*, the United States Supreme Court confirmed that, in a suit for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." 594 U.S. at 415. That is, a plaintiff must show that the

7

harm actually materialized or that the risk of future harm caused a separate concrete harm. *Id*. In other words, the mere risk of future harm, without more, is insufficient to demonstrate Article III standing. *TransUnion,* at 436–37; see also *Driehaus*, 573 U.S. at 158) (holding that a future injury constitutes an Article III injury in fact only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."). A plaintiff must demonstrate that "the risk of future harm materialized," or the exposure to that risk caused "some other injury." *TransUnion*, 594 U.S. at 437; *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d. Cir. 2023).

Moreover, a plaintiff must demonstrate that the risk of future harm (i.e., the risk of distribution to third parties) is more than speculative. *Id*. at 438. (citing *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1040 (9th Cir. 2020) (holding that because those plaintiffs had failed to "establish[ ] a serious likelihood of disclosure," the Court declined to "simply presume a material risk of concrete harm.")) "Allegations of possible future injury" or even an "objectively reasonable likelihood" of future injury are insufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). To be sure, Plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending. *Clapper*, 568 U.S. at 416; *see also Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) (holding that a "plaintiff

cannot create an injury by taking precautionary measures against a speculative fear."). When plaintiffs fail to allege a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury. *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 303 (2d. Cir. 2021); *Rand v. Travelers Indemnity Company*, 637 F. Supp.3d 55, 66 (S.D.N.Y. 2022).

The recent decision in *Rodriguez v. CRG Lynwood LLC*, No. 24-111576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025) (Judge Michelson) (attached as **Exhibit C**), provides a clear and persuasive basis for dismissal. There, the plaintiff asserted class claims arising from a data breach involving Social Security numbers and medical information, yet the court rejected the same injury theories Plaintiffs advance here. The *Rodriguez* court held that an alleged increased risk of future fraud was speculative and insubstantial, and that time and money spent on credit monitoring or account vigilance could not constitute an injury absent a substantial risk of harm. 2025 WL 2700614 at *5. The court likewise rejected the asserted "diminished value" of personal information, noting the absence of any allegation that the plaintiff was hindered in using her data or intended to sell it. *Id.* The *Rodriguez* plaintiff (as the Plaintiffs here), did not allege that the breach caused her to change any of her identifying information (e.g., her Social Security number) or that she had been hindered in her ability to use the compromised information to

obtain services or open accounts. Instead, (as Plaintiffs do here)[1] she focused on the value of her data on the black market. *Id.* But, as the court explained, plaintiff had no intent in participating in an illegal market. *Id.*, citing *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-12086, 2023 WL 4303577, at \*4 n.2 (E.D. Mich. June 30, 2023) (finding no injury-in-fact where plaintiff did not allege any plan to sell his private information).

Here, Plaintiffs Stucky, Powers, Richardson, Ferguson, Mermeche, Sessoms, Barnette, and Sikora lack standing to pursue their claims and their claims must be dismissed.

### 1. Plaintiff Ferguson Was Not Impacted By the Cyberattack.

As an initial matter, <u>Mr. Ferguson was never a customer of Towne.</u> *See attached Declaration,* **Exhibit A,** § 7. Towne has no records, whatsoever, of a "Donald Ferguson." **Ex. A,** § 5. Towne also has no record that notice of the incident was mailed to a "Donald Ferguson." **Ex. A,** § 6. Plaintiff Ferguson further fails to allege whether he actually paid for these alleged bank charges or whether the bank initiated a refund, fraud prevention, or insurance measures.

### 2. Plaintiff Sikora's Alleged Injury Occurred Before The Cyberattack.

As for Plaintiff Sikora, he notified Towne of the alleged $1,200 phone scam on June 16, 2025. **Ex. A,** § 8 (citing **Exhibit 1**). Mr. Sikora provided documents and

---

[1] ECF No. 18 at PageID.246 ¶ 270; and PageID.247 ¶ 272.

correspondence which demonstrate that he was first contacted by the bad actor on **May 12, 2025 – *one month prior to the Cyberattack***. **Ex. A,** § 9. Ultimately, on **May 19, 2025**, Mr. Sikora claims to have made a payment of $1,022.14 to the bad actor. **Ex. A,** § 10. The fact that the alleged incident and payment occurred a month prior to the Cyberattack is fatal to Mr. Sikora's claim that Towne's actions regarding the Cyberattack caused his damages.

> ### 3. Plaintiffs Stucky, Powers, Richardson, Mermeche, Sessoms, and Barnette Fail to Allege Actual Injury.

Plaintiffs Stucky, Powers, Richardson, Mermeche, Sessoms, and Barnette plainly fail to allege any facts showing they have suffered concrete, particularized injuries which are fairly traceable to Towne's conduct regarding the Cyberattack. At a bare minimum, those Plaintiffs must be dismissed for lack of standing. Indeed, Plaintiffs resort to pleading a litany of speculative "injuries" that might materialize at some unspecified time in the future – not concrete harms. In fact, Plaintiffs primarily rely on potential injuries that may (or may not) occur sometime in the future, namely, a continuing "risk" for Plaintiffs' respective "lifetimes." (ECF No. 18 at PageID.189 ¶ 10).

These Plaintiffs' allegations of conjectural "injuries" (time spent researching the Cyberattack, reviewing financial statements, monitoring credit information, remaining vigilant, diminution in the value of their PII loss of privacy; lost time; increased spam calls, texts, and emails; anxiety, stress, and fear) are woefully

insufficient to establish Article III standing. These Plaintiffs do not allege that they have been the victim of actual identity theft. They merely claim that they have taken preventative measures in an effort to mitigate the risk of any potential instances of identity theft. These Plaintiffs fail to identify even an attempted misuse of their personal information, let alone a successful misuse to their detriment. In fact, Plaintiffs fail to plead facts from which the Court could reasonably infer that the bad actor read, copied, and understood Plaintiffs' particular personal information. Plaintiffs do not allege that any part of the compromised dataset has been misused or that any third party has used Plaintiffs' personal information to fraudulently withdraw money, obtain a credit card, take out a loan, or otherwise assume their identity.

In sum, these Plaintiffs' alleged risk of future identity theft is too speculative to support Article III standing. Indeed, the Sixth Circuit expressly rejects "bare allegation[s] of anxiety [as] not a cognizable, concrete injury" because they are "too speculative to qualify as an injury in fact" and are "merely a fear of a future harm that is not certainly impending. *Garland v. Orlans, PC.*, 999 F.3d 432, 436 (6th Cir. 2021) (citing *Clapper*, 568 U.S. at 410). They have not plausibly shown a substantial risk of future identity theft or fraud, have not alleged they incurred any expense as a result of the Cyberattack, and can only point to the self-created "harm" of their time incurred in worrying about future identify theft to secure standing. Plaintiffs cannot

12

create standing. *See Clapper*, 568 U.S. at 416. Accordingly, their claims must be dismissed for lack of standing under Rule 12(b)(1).

**B.  Count I: Plaintiffs' Negligence Claims Fail Because Plaintiffs Do Not Allege Actual Injury or Legally Cognizable Damages.**

Even if Plaintiffs could establish standing to overcome Rule 12(b)(1), Plaintiffs' Complaint does not establish the *prima facie* elements under Rule 12(b)(6) and well-established Michigan substantive law. To state a negligence claim under Michigan law, a plaintiff must plead duty, breach, causation, and damages. *See Henry v. Dow Chem. Co*., 473 Mich 63, 72 (2005). "Underlying these four elements is the issue of injury, and it is well settled that, in Michigan, the injury complained of in a negligence action must be an actual, present injury." *Doe v. Henry Ford Health Sys.*, 308 Mich App 592, 600 (2014). "Michigan law requires more than a merely speculative injury." *Henry*, 473 Mich at 72. The Michigan Supreme Court has emphasized that it "is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." *Id*. at 73 (emphasis in original). "Consequently, damages 'incurred in anticipation of possible future injury rather than in response to present injuries' are not cognizable under Michigan law." *Doe*, 308 Mich App at 600 (quoting *Henry*, 473 Mich at 73). The present physical injury requirement "more clearly defines who actually possesses a cause of action," "reduces the risks of fraud," and ensures "that there will be standards-legally

comprehensible standards that guide the judicial branch's resolution of the matters brought before it." *Henry*, 473 Mich at 76.

In *Doe*, two subcontractors of the defendant healthcare system exposed the plaintiff's medical records on the internet. 308 Mich App at 594-95. The plaintiff sued for negligence and breach of contract, and sought damages for the cost of a credit-monitoring service to protect her identity. *Id*. at 595-96. The trial court denied the defendant's motion for summary disposition, but the appellate court reversed, holding that "[a]bsent some . . . indication of present injury to her credit or identity, it is clear that these damages for credit monitoring were incurred in anticipation of possible future injury." *Id*. at 601. The court also held that because the plaintiff's claimed economic losses "were wholly derivative of a *possible, future* injury rather than an *actual, present* injury,' the costs of these credit-monitoring services are not cognizable under Michigan's negligence law." *Id*. (emphasis in original; internal citation omitted); *see also Nyman v. Thomson Reuters Holdings, Inc*., 329 Mich App 539, 553-54 (2019) (affirming summary disposition of data breach lawsuit where "complaint lacked any allegations that [plaintiffs] had suffered any harm giving rise to actual damages proximately caused by defendant's conduct").

*Henry* similarly establishes that Plaintiff's claims are fundamentally flawed. There, the plaintiffs alleged that a chemical plant negligently released a chemical, dioxin, and placed them at an increased risk of harm. 473 Mich at 68. The plaintiffs

14

sought the judicial creation of a medical monitoring program to detect future health problems. *Id*. at 78. The Michigan Supreme Court rejected the argument that the plaintiffs had suffered an actionable injury because they needed ongoing health monitoring. As the Court held (at *id*.):

> It is no answer to argue, as plaintiffs have, that the need to pay for medical monitoring is *itself* a present injury sufficient to sustain a cause of action for negligence. In so doing, plaintiffs attempt to blur the distinction between "injury" and "damages." While plaintiffs arguably demonstrate economic losses that would otherwise satisfy the "damages" element of a traditional tort claim, the fact remains that these economic losses are wholly derivative of a possible, future injury rather than an actual, present injury. A financial "injury" is simply not a present physical injury, and thus not cognizable under our tort system. Because plaintiffs have not alleged a present physical injury, but rather, "bare" damages, the medical expenses plaintiffs claim to have suffered (and will suffer in the future) are not compensable.

The Michigan Court of Appeals has confirmed that the holdings of *Doe* and *Henry* are fully applicable where a plaintiff alleges that a criminal actor intentionally compromised his or her personal information. In *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339 (Mich Ct App Oct. 14, 2021) (attached as **Exhibit D**), the plaintiff alleged that unknown attackers gained access to Munson's systems and accessed information associated with more than 75,000 patients. *Id*. at *1. Munson moved for summary disposition, arguing that the plaintiff failed to state a claim because she alleged only a heightened risk of future injury, rather than an actual, present injury. *Id*. at *2. The trial court granted Munson's motion, and the appellate court affirmed. As the court held (*id.* at *3):

> Even though plaintiff alleged that she . . . suffered present damages, she did not allege any damages that arose from an actual, present injury; instead, the allegations involved possible future injuries and the prophylactic measures that she and the potential class members might reasonably take to prevent or mitigate the potential future injuries. Allegations of this nature are inadequate to state a cause of action for negligence under the rule stated in *Henry*.

The *Rakyta* court continued by explaining that, while the plaintiff "believed her private information had been stolen and sold in the data breach . . . plaintiff did not allege that she or any other potential class member had actually been a victim of identity theft, let alone the victim of identity theft that could be directly traced to defendant's negligent conduct. . . ." *Id. See also Canterbury v. Corewell Health*, No. 24-00189-NZ (Cir Ct of Kent Cnty June 11, 2024) (attached as **Exhibit E**); and *Saker v. Cherry St. Servs., Inc. d/b/a Cherry Health*, No. 24-01489-CZ (Cir Ct of Kent Cnty October 4, 2024) (attached as **Exhibit F**) (in both cases, the court dismissed the complaints in their entirety, with prejudice, and followed the authority of *Henry*, *Doe*, and *Rakyta* in finding the plaintiffs had merely alleged possible future injuries and other prophylactic measures to mitigate the potential future injuries).

*Polkowski v. Jack Doheny Companies, Inc.,* No. 2:25-cv-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) (attached as **Exhibit G**), further compels dismissal here. In *Polkowski*, the plaintiff alleged that his PII was exfiltrated and published on the dark web following a cyberattack and asserted familiar theories of injury, including increased risk of future identity theft, mitigation costs, emotional

distress, diminished value of PII, and loss of privacy. This Court ultimately dismissed the case with prejudice, holding that the plaintiff could not establish a compensable present injury under Michigan law. Relying on *Doe* and *Henry*, this Court emphasized that speculative future harm, derivative economic losses incurred to guard against possible misuse, and the mere disclosure or publication of PII—absent actual identity theft, financial loss, or present injury to credit or identity—are not cognizable damages under Michigan negligence or contract law. 2025 WL 3079358 at *9. The *Polkowski* court further explained: "[i]t is clear, the fact that PII is posted to the dark web, while unsettling, cannot be remedied under Michigan law because disclosure of stolen information alone is not a present injury if no actual identity theft resulted from the disclosure." *Id.* at *8. Similarly, in *Rodriguez*, 2025 WL 2700614 at *7 (E.D. Mich. Sept. 22, 2025), the court relied on *Henry* to underscore that economic losses derivative of a possible future injury are not compensable and that emotional distress is actionable only when accompanied by present physical manifestations. Most recently, *In re Grede Holdings LLC Data Breach Litigation*, Case No.: 25-cv-10831 (E.D. Mich. February 12, 2026) (Judge White) (attached as **Exhibit H**), followed the reasoning in *Polkowski* and *Rodriguez* to further validate this Court's legal precedent.

Furthermore, in addition to actual damages, both factual and proximate causation are necessary to prevail in a Michigan negligence action. *Craig v.*

*Oakwood Hosp.*, 471 Mich. 67, 86-87 (2004). Factual causation requires a "showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Ray v. Swager*, 501 Mich. 52, 63 (2017) (quotation omitted). Proximate causation "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* (quotation omitted). Courts "must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Craig*, 471 Mich. at 87.

Plaintiff Shelton claims that "an unauthorized third-party made a charge for over $1,000 on her Central State Credit Union account." (*Id*. at PageID. 213-214 ¶ 107), and Plaintiff Cromer claims an "unauthorized third-party opened a bank account at New Jersey Affinity Federal Credit in her name." and that "an unauthorized third-party attempted to open a Sam's Club credit line in her name." (*Id*. at PageID. 226 ¶ 107). However, Plaintiffs Shelton and Cromer cannot satisfy the factual causation prong. The Complaint omits any plausible allegations that "but for" the data breach any alleged injuries "would not have occurred." *Ray*, 501 Mich. at 63; *see also Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 288 (6th Cir. 2017) (affirming dismissal of a state law negligence claim where the complaint contained insufficient allegations to plausibly establish causation) (this is true for all named Plaintiffs). And the alleged temporal proximity between the data

breach and the alleged "injuries" is insufficient to plausibly establish a causal link. *Lund v. Travelers Indem. Co. of Am.*, 2016 WL 7601903 at *7 (Mich. Ct. App. Dec. 29, 2016) ("Showing only a temporal relationship is generally insufficient to create a fact issue on a necessary causal link between a plaintiff's accidental injury and subsequent complaints and treatments."); *see also Craig*, 471 Mich. at 93 ("It is axiomatic in logic and in science that correlation is not causation.").

In short, Plaintiffs Shelton and Cromer fail to draw any connection between the alleged fraudulent charges and the Cyberattack. Plaintiffs Shelton's and Cromer's theory of causation rests on nothing more than assumption and possibility. Plaintiffs Shelton and Cromer do not allege that their bank account information was ever provided to Towne and therefore potentially exposed in the Cyberattack. The Complaint does not identify what specific financial data Plaintiffs Shelton and Cromer provided to Towne (*i.e.*, bank account number, direct deposit / ACH information), nor does it allege that this data included the actual accounts or bank information that purportedly experienced the fraudulent charges. Without any factual link between the information shared and the accounts affected, Plaintiffs Shelton's and Cromer's claims of causation are purely speculative and lack the necessary factual foundation to proceed. In fact, at no point do Plaintiffs Shelton and Cromer allege that the Cyberattack caused the bank accounts to be allegedly compromised. It does not follow then that the suspicious transactions they claim to

have discovered were caused as result of Towne's conduct regarding the Cyberattack. Plaintiffs merely *assume* – without factual support – that their personal data was compromised in the attack, and that this somehow caused them damages. Each step of Plaintiffs' argument rests on speculation rather than fact, and the resulting chain of causation is broken at every link. In accordance with *Henry*, *Doe*, *Nyman*, *Rakyta*, *Saker, Canterbury, Polkowski*, *Rodriguez*, and *Grede*, among others, because Plaintiffs' Complaint lacks sufficient allegations of "actual" and "present" damages, as well as factual causation, Plaintiffs cannot "nudge" their negligence claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs allege possible future injuries and prophylactic measures they might take to mitigate the potential future injuries. But, under clear and binding Michigan law, that is not enough. Present damages derivative of a possible future injury are not actionable. Nor does fear of future injury serve as a basis for recovery based on a negligence theory. In sum, Michigan law forecloses data-breach claims predicated on hypothetical future misuse, self-imposed monitoring costs, and abstract privacy concerns, which lack a plausible causal connection. Accordingly, Count I of Plaintiffs' Complaint must be dismissed.

## C.  Count II: Plaintiffs' Breach of Implied Contract Claim is Unavailing.

In order to plead a claim for breach of contract, a plaintiff must establish (1) the existence of a contract, (2) Towne breached the contract; and (3) the breach

resulted in damages to Plaintiffs. *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 499 Mich 74, 100 (2016). A valid contract must be supported by legal consideration. *See Barclae v. Zarb*, 300 Mich App 455, 471 (2013). Plaintiffs' claim fails on all accounts. In fact, even assuming the existence of a mutuality of agreement between the parties – *i.e.*, that Plaintiffs provided their personal identifying information to Towne in exchange for loan services and an implied assurance that their personal information would be protected (which Towne does not concede) – Plaintiffs cannot point to an independent source of consideration for this promise beyond their express loan services relationship. In other words, Plaintiffs' allegations as to consideration are utterly insufficient because any purported implied contract would have been duplicative of the parties' express loan services agreement and unsupported by independent consideration. *In re Grede Holdings LLC*, Case No.: 25-cv-10831 at pp. 9-10, citing *Polkowski*, 2025 WL 3079358 at *10 (dismissing breach of implied contract claim and holding that the plaintiff's provision of PII was merely incidental to their employment and cannot serve as consideration for a separate agreement to safeguard that data); *see also Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003) (stating that "a contract will be implied only if there is no express contract covering the same subject matter."). Because Plaintiffs' "provision of [personal identifying information] was merely incidental to their [relationship]" it "cannot serve as consideration for a separate agreement to safeguard that data."

*Polkowski*, at *10. Accordingly, Plaintiffs fail to state a plausible claim for relief under an implied contractual theory and Count II must be dismissed.

**D.    Count III: Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege They Directly Conferred a Benefit on Towne.**

Plaintiffs' unjust enrichment claim is unsupported by law or fact and must be dismissed. Plaintiffs make no assertion that Towne retained an independent benefit from them. To state a claim for unjust enrichment, a "plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich App 187, 195 (2006). Notably, "not all enrichment is necessarily unjust. The key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich App 192, 205 (2017) (dismissing unjust enrichment claim where "the benefit defendant received . . . was nothing more than what all the parties contemplated"); *Morris Pumps*, 273 Mich App at 196 (similar). Against this standard, Plaintiffs' unjust enrichment claim fails. Plaintiffs do not allege that Towne retained any independent benefit from them. Any benefit Towne received from maintaining or using Plaintiffs' PII was merely incidental to the parties' services agreement and cannot be said to have been conferred directly by Plaintiffs, as required by law. *In re Grede Holdings LLC*, Case No.: 25-cv-10831 at pp. 11-12; see also *Landstar Express Am., Inc. v. Nexteer Auto.*

37721748.1

*Corp.*, 319 Mich App 192, 205 (2017). The benefit must come "directly from the plaintiff." *Polkowski*, 2025 WL 3079358 at *11 (citing *Lochridge v. Quality Temporary Services, Inc.*, 2023 WL 4303577 at *7 (E.D. Mich. 2023). Mere monetary benefits derived from the "use of [Plaintiffs' PII]" are not sufficiently direct from the Plaintiffs to satisfy the first prong of an unjust enrichment claim. *Id.* Rather, the alleged benefit – cost savings from underinvesting in cybersecurity – would be derivative of Towne's internal business decisions, not a transfer of value from Plaintiffs themselves. Plaintiffs make no assertion that Towne retained an independent benefit from them. *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich App 192, 205 (2017). Quite simply, Plaintiffs have failed to allege that they bestowed a benefit upon Towne, or that some inequity would result from Towne retaining that (non-existent) benefit. As a result, Count III must be dismissed.

**E.      Count IV: Plaintiffs Fail to Allege Breach of Fiduciary Duty.**

To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) resulting damages. *Highfield Beach at Lake Mich. v. Sanderson*, 331 Mich App 636, 666 (2020). Whether a fiduciary duty exists is a question of law. *Calhoun Cnty. v. Blue Cross Blue Shield Mich.*, 297 Mich App 1, 20 (2012). The Michigan Supreme Court has said that a fiduciary relationship usually arises in four situations:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one

person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*In re Est. of Karmey*, 468 Mich. 68, 75 (2003). None of those situations exists or is even alleged to exist here. Thus, by default, no fiduciary duty exists here. Plaintiffs' theory seems to be that Towne became a fiduciary merely by virtue of taking possession of their PII, which they claim gives rise to a special relationship. That theory is unprecedented and if accepted would turn every entity that took possession of PII – from mortgage brokers to commercial counterparties – into fiduciaries. That, of course, is not the law. Because Plaintiffs did not – and cannot – allege the existence of a fiduciary duty in this context, they have failed to allege any breach of some non-existent duty. And even if Plaintiffs could satisfy the duty and breach elements of the claims, they allege no facts showing that they have suffered actual, present injuries, proximately caused by the Cyberattack. As a result, Count IV must be dismissed.

**F. Plaintiffs Shelton's and Richardson's CCPA Claims Are Insufficient.**

In order to qualify as a "business" under the California Consumer Privacy Act ("CCPA"), Plaintiffs Shelton and Richardson must allege that Towne both (1) collects PII and (2) determines why and how the PII should be processed. *In re*

*Accellion, Inc. Data Breach Litig*., 713 F. Supp. 3d 623, 640 (N.D. Cal. 2024), *reconsideration denied*, No. 21-CV-01155-EJD, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024). Both requirements must be alleged by the plaintiffs. *Id*. at 641 ("Without any allegations as to what [defendant] decides or 'determines' with respect to processing Plaintiffs' PII, the Court cannot find that the Complaint has alleged that [defendant] is a 'business' for the purposes of the CCPA."). Plaintiffs have alleged neither element. This alone is a basis for dismissal. Moreover, Plaintiffs Shelton and Richardson fail to allege any <u>facts</u> showing that the Cyberattack occurred *as a result* of Towne's failure to implement and maintain reasonable security procedures. Broad, conclusory allegations are insufficient. *See, e.g., Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-cv-00031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claims where plaintiff failed to allege any facts to support the notion that defendant's security was deficient); *In re Bank of Am. Cal. Unemployment Benefits Litig*., 674 F. Supp. 3d 884, 916 (S.D. Cal. 2023) (allegations showing only the "possibility" of deficient security are insufficient); *Udo v. Wells Fargo Bank, N.A*., No. 23-cv-02935-J SW, 2023 WL 8600791, at *3 (N.D. Cal. Dec. 12, 2023) (dismissing CCPA claim that "simply recites the elements of the statute"). For the foregoing reasons, Towne respectfully requests this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

Dated: March 13, 2026        Respectfully Submitted,

                                        */s/ Timothy J. Lowe*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 13, 2026, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

*/s/ Timothy J. Lowe*_____
Timothy J. Lowe (P68669)
*Counsel for Towne Mortgage Company*

26