# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE TOWNE MORTGAGE COMPANY DATA SECURITY INCIDENT LITIGATION | Case No. 25-cv-13677 |
| | Hon. Brandy R. McMillion |
| | **ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

## STATEMENT OF ISSUES PRESENTED

1.   Have Plaintiffs Sufficiently Alleged Article III Standing?

Plaintiffs Answer: Yes.

2.   Have Plaintiffs Sufficiently Stated Their Negligence Claim?

Plaintiffs Answer: Yes.

3.   Have Plaintiffs Sufficiently Alleged Their Implied Contract Claim?

Plaintiffs Answer: Yes.

4.   Have Plaintiffs Sufficiently Alleged Their Unjust Enrichment Claim?

Plaintiffs Answer: Yes.

5.   Have Plaintiffs Sufficiently Alleged Their Breach of Fiduciary Duty Claim?

Plaintiffs Answer: Yes.

6.   Have Plaintiffs Sufficiently Alleged Their CCPA Claim?

Plaintiffs Answer: Yes.

i

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- *In re Flagstar December 2021 Data Sec. Incident Litig.*,
  2024 WL 5659583 (E.D. Mich. Sep. 30, 2024)

- *Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016)

- *In re Numotion Data Incident Litig.*,
  2025 WL 57712 (M.D. Tenn. Jan. 9, 2025)

- *Kingen v. Warner Norcross + Judd LLP*,
  2023 WL 11965363 (W.D. Mich. Oct. 5, 2023)

- *Lochridge v. Quality Temp. Servs.*,
  2023 WL 4303577 (E.D. Mich. June 30, 2023)

- *Bowen v. Paxton Media Grp., LLC*,
  2022 WL 4110319 (W.D. Ky. Sep. 8, 2022)

- *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020)

- *In re Manpower of Lansing, MI, Inc., Breach Litig.*,
  No. 1:25-cv-956 (W.D. Mich. Mar. 19, 2026)

- *Hummel v. Teijin Auto. Techs., Inc.*,
  2023 WL 6149059 (E.D. Mich. Sep. 20, 2023)

- *Herbert v. Covenant Med. Ctr. Inc.*,
  No. 21-044500, Order on Mot. for Summ. Disp. (Saginaw Cnty. Cir. Ct. Feb. 2, 2022)

ii

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................1

STANDARD OF REVIEW .....................................................................................4

ARGUMENT ...........................................................................................................5

    I.    Plaintiffs Sufficiently Establish Article III Standing. ....................................5

        a.    The Substantial Risk of Further Harm Establishes Standing.......................5

        b.    Lost Time and Efforts to Mitigate Breach Consequences ..........................7

        c.    Diminished Value of PII .............................................................................8

        d.    Plaintiffs' Remaining Injuries Also Confer Standing.................................9

    II.    Plaintiffs Sufficiently State Their Negligence Claim....................................10

    III.  Plaintiffs Sufficiently Allege Their Implied Contract Claim. .......................15

    IV.  Plaintiffs Sufficiently Allege Their Unjust Enrichment Claim.....................19

    V.    Plaintiffs Sufficiently Allege Their Breach of Fiduciary Duty Claim. .........20

    VI.  Plaintiffs Sufficiently Allege Their CCPA Claim.......................................22

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................4

*Auto-Owners Ins. Co. v. Lepp*,
  2011 WL 2858788 (Mich. Ct. App. July 19, 2011) ............................................16

*Banker & Brisebois Co. v. Maddox*,
  2014 WL 1720285 (Mich. Ct. App. Apr. 29, 2014)............................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................4, 5

*Bell v. Mich. Council 25 of Am. Fed'n of State, Cnty., Mun. Emps., AFL-CIO, Loc. 1023*,
  2005 WL 356306 (Mich. Ct. App. Feb. 15, 2005)........................................ 14, 21

*Belle Isle Grill Corp. v. City of Detroit*,
  666 N.W.2d 271 (Mich. App. 2003) ...................................................................18

*Bledsoe v. FCA US LLC*,
  378 F. Supp. 3d 626 (E.D. Mich. 2019) ................................................................4

*Bowen v. Paxton Media Grp., LLC*,
  2022 WL 4110319 (W.D. Ky. Sep. 8, 2022)................................................. passim

*Brickman v. Maximus, Inc.*,
  2022 WL 16836186 (S.D. Ohio May 2, 2022)...................................................7, 8

*Brooks v. Peoples Bank*,
  732 F. Supp. 3d 765 (S.D. Ohio 2024).................................................................8

*Capiau v. Ascendum Machinery, Inc.*,
  2024 WL 3747191 (W.D.N.C. Aug. 9, 2024)........................................................9

*Carter by Carter v. Cornwell*,
  983 F.2d 52 (6th Cir. 1993) ...............................................................................5

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................................5

*Compare Karter v. Epiq Sys., Inc.*,
  2021 WL 4353274 (C.D. Cal. July 16, 2021) ......................................................24

*Deschane v. Klug*,
  2 N.W.3d 131 (Mich. App. 2022) .......................................................................19

*Doe v. Henry Ford Health Sys.*,
  865 N.W.2d 915 (Mich. App. 2014) ......................................................... 11, 12, 13

*Enslin v. Coca-Cola Co.*,
  136 F. Supp. 3d 654 (E.D. Pa. 2015).................................................................16

iv

*Enslin v. Coca-Cola Co.*,
  739 F. App'x 91 (3d Cir. 2018)................................................................16
*Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016)..........................................................7, 10
*Gordon v. Zeroed-In Tech., LLC*,
  2025 WL 936415 (D. Md. Mar. 26, 2025).................................................8, 9
*Haney v. Charter Foods N., LLC*,
  747 F. Supp. 3d 1093 (E.D. Tenn. 2024) ..................................................7, 8
*Henry v. Dow Chem. Co.*,
  701 N.W.2d 684 (Mich. 2005) ........................................................ 11, 12, 13
*Herbert v. Covenant Med. Ctr. Inc.*,
  No. 21-044500, Order on Mot. for Summ. Disp. (Saginaw Cnty. Cir. Ct. Feb. 2,
  2022).........................................................................................................20
*Hile v. Michigan*,
  86 F.4th 269 (6th Cir. 2023)......................................................................4
*Hummel v. Teijin Auto. Techs., Inc.*,
  2023 WL 6149059 (E.D. Mich. Sep. 20, 2023) ...................................... 15, 17, 18
*In re Accellion, Inc. Data Breach Litig.*,
  713 F. Supp. 3d 623 (N.D. Cal. 2024)..................................................... 23, 24
*In re Blackbaud, Inc., Cust. Breach Litig.*,
  2021 WL 3568394, at *5 (D.S.C. Aug. 12, 2021) .........................................24
*In re Blackbaud, Inc., Cust. Breach Litig.*,
  567 F. Supp. 3d 667 (D.S.C. Oct. 19, 2021) ..............................................8, 9
*In re Bon Secours Mercy Health Breach Litig.*,
  2025 WL 1827804 (S.D. Ohio July 2, 2025) ................................................15
*In re CBIZ Breach Litig.*,
  2025 WL 1557033 (N.D. Ohio June 2, 2025) .................................................8
*In re Estate of Karmey*,
  658 N.W.2d 796 (Mich. 2003) ....................................................................21
*In re Flagstar December 2021 Data Sec. Incident Litig.*,
  2024 WL 5659583 (E.D. Mich. Sep. 30, 2024) ................................. 6, 10, 15, 22
*In re Grede Holdings LLC Data Breach Litig.*,
  No. 25-cv-10831 (E.D. Mich. Feb. 2026) ....................................................13
*In re Manpower of Lansing, MI, Inc., Breach Litig.*,
  No. 1:25-cv-956 (W.D. Mich. Mar. 19, 2026)........................................... 13, 15
*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020) .............................................................8
*In re Numotion Data Incident Litig.*,
  2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) ........................................... 7, 8, 14

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   2020 WL 2214152 (S.D. Cal. May 7, 2020) ..........................................................8

*Kingen v. Warner Norcross + Judd LLP*,
   2023 WL 11965363 (W.D. Mich. Oct. 5, 2023) ........................................... passim

*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*,
   900 N.W.2d 650 (Mich. App. 2017) .............................................................. 19, 20

*Lochridge v. Quality Temp. Servs.*,
   2023 WL 4303577 (E.D. Mich. June 30, 2023) ........................................... passim

*M.G. v. Therapymatch, Inc.*,
   2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)......................................................25

*Mallory v. City of Detroit*,
   449 N.W.2d 115 (Mich. App. 1989) .....................................................................15

*McKenzie v. Allconnect, Inc.*,
   369 F. Supp. 3d 810 (E.D. Ky. 2019)............................................................. 14, 17

*Miller v. NextGen Healthcare, Inc.*,
   742 F. Supp. 3d 1304 (N.D. Ga. 2024) ................................................................24

*Morrow v. TransUnion LLC*,
   730 F. Supp. 3d 671 (E.D. Mich. 2024) .................................................................4

*Newman v. Total Quality Logistics, LLC*,
   2021 WL 1192669 (S.D. Ohio Mar. 30, 2021) ......................................................8

*Payne v. Novartis Pharms. Corp.*,
   767 F.3d 526 (6th Cir. 2014) ................................................................................15

*Polkowski v. Jack Doheny Cos., Inc.*,
   2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) ......................................... 6, 13, 18

*Rakyta v. Munson Healthcare*,
   2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021) .............................................13

*Ramos v. Wells Fargo Bank, N.A.*,
   2023 WL 5310540 (S.D. Cal. Aug. 17, 2023)......................................................25

*Rodriguez v. CRG Lynwood LLC*,
   2025 WL 2700614 (E.D. Mich. Sep. 22, 2025) ..................................................5, 6

*Shah v. Cap. One Fin. Corp.*,
   768 F. Supp. 3d 1033 (N.D. Cal. 2025)................................................................25

*Silveira v. Commer. Specialty Truck Holdings, LLC*,
   2025 WL 2323911 (E.D. Ky. Aug. 12, 2025)...................................................7, 14

*Stinson v. YUM! Brands, Inc.*,
   2025 WL 2755879 (W.D. Ky. Aug. 29, 2025).......................................................7

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...............................................................................................5

*Viviali v. One Point HR Sols., LLC*,
   2025 WL 1158740 (E.D. Ky. Apr. 21, 2025)........................................................7

**Statutes**

Cal. Civ. Code § 1798.140(d)(1) ...........................................................................23
Cal. Civ. Code § 1798.140(f).................................................................................23
Cal. Civ. Code § 1798.140(y) ...............................................................................24
Cal. Civ. Code § 1798.150(a)(1).............................................................................22

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................4
Fed. R. Civ. P. 12(b)(6)........................................................................................4

## INTRODUCTION

Plaintiffs[1] bring this class action against Defendant Towne Mortgage Company ("Defendant"), individually and on behalf of all similarly situated individuals ("Class Members"), whose highly sensitive personally identifiable information ("PII") was accessed, stolen in a cyberattack ("Breach"), and published on the Dark Web. Plaintiffs seek to hold Defendant accountable for its failure to implement reasonable security measures to protect their and Class Members' PII. Due to Defendant's actions and inactions, Plaintiffs' and Class Members' PII— including Social Security numbers, financial account information, and loan data— was accessed by cybercriminals, and Defendant's Motion to Dismiss provides no assurance as to how that information will be used. Plaintiffs' Consolidated Class Action Complaint plausibly alleges concrete and particularized injuries sufficient to establish Article III standing and state claims for negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, and violation of the California Consumer Privacy Act. Thus, Defendant's Motion should be denied in its entirety.

## FACTUAL BACKGROUND

Defendant is a full-service mortgage lender headquartered in Troy, Michigan. Complaint, ¶¶[2] 3, 29. In the ordinary course of obtaining mortgage loans and related

---

[1] Plaintiff Ferguson will voluntarily dismiss his claims, upon additional review, he had received a breach letter from a separate entity, Towne Bank.

[2] Paragraph markings (¶) refer to the Complaint, ECF No. 18.

1

services, Plaintiffs and the Class were required to provide Defendant with highly sensitive PII, including names, dates of birth, Social Security numbers, and financial and loan data. ¶¶ 4, 31. Defendant collected and maintained this PII as an essential part of its business operations. ¶ 41. In exchange, Defendant expressly and impliedly represented it would safeguard this sensitive PII, maintain its confidentiality, and use it only for legitimate purposes. ¶¶ 32. Plaintiffs and the Class reasonably relied on these representations in entrusting Defendant with their PII. ¶¶ 37-39.

Plaintiffs allege that on or about June 7, 2025, Defendant first detected unauthorized access to its network systems. *See* ¶¶ 7, 45.[3] Investigation confirmed cybercriminals infiltrated Defendant's network and accessed files containing Plaintiffs' and the Class's PII, including names, Social Security numbers, financial account numbers, loan numbers, and dates of birth. ¶¶ 47-48. The cybercriminals were able to obtain PII because Defendant maintained Plaintiffs' and the Class's PII in its systems without adequate safeguards and in an unencrypted form. ¶ 51. A ransomware group later publicly claimed responsibility for the attack and posted samples of the stolen data. ¶ 46. Despite first discovering the intrusion in early June 2025, Defendant did not begin notifying affected individuals until more than five months later. ¶¶ 45, 50 (Nov. 15 Notices). Worse, Defendant acknowledges it was

---

[3] Plaintiffs' Complaint alleges that a targeted attack was taking place and was "detected" on June 7, 2025 by Defendant, ¶¶ 2, 7, 45—not that it started on that date.

made aware of fraudulent activity a mere nine days after the Breach, but did nothing. *See* Mot., Ex. A. This delay deprived Plaintiffs of the opportunity to take timely steps to protect themselves and increased the risk of misuse of their PII.

The Breach was the direct result of Defendant's failure to implement reasonable and industry-standard security measures. As alleged, Defendant failed to encrypt sensitive data, failed to deploy phishing-resistant multi-factor authentication ("MFA"), lacked adequate monitoring and alerting systems, and did not properly train its personnel to detect and respond to cyber threats. ¶¶ 52-55. These deficiencies allowed cybercriminals to access, persist within, and ultimately exfiltrate sensitive data from Defendant's systems. ¶¶ 55-56. The PII compromised in the Breach is particularly valuable and sensitive, including immutable identifiers such as Social Security numbers and financial account information. ¶¶ 10, 48. Such information is widely recognized as a prime target for identity theft and financial fraud, and once exposed, can be used indefinitely by malicious actors. ¶¶ 60-62, 74.

Consistent with the known risks associated with such breaches, Plaintiffs have experienced concrete consequences. Several Plaintiffs have suffered fraudulent charges, unauthorized account activity, and other misuse of their PII following the Breach. *See* ¶¶ 107, 174, 240, 257. All Plaintiffs have been forced to expend time and resources monitoring their financial accounts, securing their identities, and mitigating the ongoing risk of fraud. *See* ¶¶ 12, 108, 111, 124, 127, 140, 143, 157,

3

161, 175, 178, 208, 211, 224, 227, 241, 244, 259, 262, 292, 299-304. As a proximate result of Defendant's failures, Plaintiffs have and will continue to suffer concrete injuries, including actual fraud, a substantial and imminent risk of identity theft, mitigation costs, privacy loss, and diminution in the value of their PII, ¶ 12, which remains at risk so long as Defendant fails to implement adequate security measures.

## STANDARD OF REVIEW

Under Rule 12(b)(1), "[a] facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss," and in overcoming such attacks, "Plaintiff's burden is 'not onerous.'" *Morrow v. TransUnion LLC*, 730 F. Supp. 3d 671, 676 (E.D. Mich. 2024). In evaluating a facial challenge, courts "must accept the allegations set forth in the complaint as true while drawing all inferences in favor of the plaintiff[.]" *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023). Under Rule 12(b)(6), a complaint should be dismissed only where it fails to state a "plausible" claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 634 (E.D. Mich. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In considering a Rule 12(b)(6) motion, "[a]ll factual allegations are deemed true and any ambiguities must be resolved in the plaintiff's favor." *Carter by Carter*

4

*v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993). A plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss; the allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.      Plaintiffs Sufficiently Establish Article III Standing.

Plaintiffs have Article III standing—which requires (1) an injury-in-fact (2) fairly traceable to defendant's alleged conduct, and (3) likely to be redressed by a favorable court ruling. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An injury-in-fact must be concrete, particularized, and actual or imminent—and it is "concrete" when it has a close relationship to a harm traditionally recognized in American courts. *Id*. at 424. A plaintiff need only "allege facts that, when assumed true, make a plausible claim" of standing. *Rodriguez v. CRG Lynwood LLC*, 2025 WL 2700614, at *2 (E.D. Mich. Sep. 22, 2025) (citation omitted). Plaintiffs allege numerous injuries-in-fact that each independently confer standing.

### a.  The Substantial Risk of Further Harm Establishes Standing.

As a court in this District explained: "The potential for harm in the future" may establish standing when "the harm is 'certainly impending' or the risk of harm is 'substantial.'" *Rodriguez*, 2025 WL 2700614, at *4 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). And in "the data-breach setting, the risk of fraud is more likely to be 'substantial' when (1) the data was intentionally taken by

hackers (as opposed to unintentionally exposed by the defendant), (2) some of the individuals whose data was taken have been the victim of fraud (even if the plaintiff has not been), and (3) the nature of the data taken lends itself to fraud (e.g., Social Security numbers as opposed to phone numbers)." *Id.* Here, Plaintiffs establish a "substantial risk" of further harm. *First*, Defendant admitted the Breach resulted in PII being copied by cybercriminals from their network, ¶ 47, and the cybergang BlackByte claimed responsibility for the Breach and posted sample data on its dark web portal. ¶ 46. *Second*, several Plaintiffs have already suffered from the misuse of their PII. ¶¶ 107, 240, 258. *Third*, the Breach exposed names, Social Security numbers, financial account numbers, loan numbers, and dates of birth. ¶ 48. Such sensitive information "lends itself to fraud[.]" *Rodriguez*, 2025 WL 2700614, at *4.

In the Sixth Circuit, these allegations establish Article III standing. In *In re Flagstar December 2021 Data Sec. Incident Litig.*, 2024 WL 5659583, at *6 (E.D. Mich. Sep. 30, 2024) (**Ex. A** hereto), this Court found plaintiffs' allegations that "their PII was targeted and stolen" in the data breach, "coupled with the named Plaintiffs' individual allegations demonstrating mitigation measures they took" were sufficient to withstand a facial attack to standing."[4] *See also Silveira v. Commer.*

---

[4] As to this notion, this Court agreed in *Polkowski v. Jack Doheny Cos., Inc.*, 2025 WL 3079358, at *4 (E.D. Mich. Nov. 4, 2025) ("[T]he Court finds that, for purposes of a facial challenge to standing, the dark web posting of Plaintiff's Social Security number, combined with the increase in phishing emails and other alleged harms, is sufficiently concrete and particularized to constitute cognizable injuries.").

6

*Specialty Truck Holdings, LLC*, 2025 WL 2323911, at *3 (E.D. Ky. Aug. 12, 2025) (finding standing and noting "[w]here a data breach targets [PII], a reasonable inference can be drawn that the hackers will use the victims' data for [] fraudulent purposes") (quoting *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (**Ex. B** hereto)); *Stinson v. YUM! Brands, Inc.*, 2025 WL 2755879, at *6 (W.D. Ky. Aug. 29, 2025) (plaintiffs "alleged a sufficiently imminent risk of future harm for Article III standing"); *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *5-6 (M.D. Tenn. Jan. 9, 2025) (same) (**Ex. C** hereto); *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1106 (E.D. Tenn. 2024) (same); *Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363, at *2 (W.D. Mich. Oct. 5, 2023) (same) (**Ex. D** hereto); *Lochridge v. Quality Temp. Servs.*, 2023 WL 4303577, at *4 (E.D. Mich. June 30, 2023) (same) (**Ex. E** hereto); *Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *5 (W.D. Ky. Sep. 8, 2022) (same) (**Ex. F** hereto); *Brickman v. Maximus, Inc.*, 2022 WL 16836186, at *4 (S.D. Ohio May 2, 2022).

### b.  Lost Time and Efforts to Mitigate Breach Consequences

In response to the substantial risk of harm, Plaintiffs lost time and effort, *inter alia*, reviewing bank accounts, monitoring credit reports, and changing passwords. ¶¶ 108, 124, 140, 157, 175, 208, 224, 241, 259. In the Sixth Circuit, these allegations establish Article III standing. *See, e.g.*, *Viviali v. One Point HR Sols., LLC*, 2025 WL 1158740, at *4 (E.D. Ky. Apr. 21, 2025); *In re CBIZ Breach*, 2025 WL 1557033, at

*5 (N.D. Ohio June 2, 2025); *Numotion*, 2025 WL 57712, at *3-5; *Haney*, 747 F. Supp. 3d at 1106; *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 775 (S.D. Ohio 2024); *Kingen*, 2023 WL 11965363, at *3; *Lochridge*, 2023 WL 4303577, at *4; *Bowen*, 2022 WL 4110319, at *5; *Brickman*, 2022 WL 16836186, at *2; *Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669, at *1 (S.D. Ohio Mar. 30, 2021).

### c.  Diminished Value of PII

Courts in data breach cases have held loss of value of PII is a viable form of damages at the motion to dismiss stage, especially where the data is already being misused. *See, e.g.*, *Gordon v. Zeroed-In Tech., LLC*, 2025 WL 936415, at *7 (D. Md. Mar. 26, 2025) (finding diminution in value of personal data as a cognizable damages theory); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-62, 494-95 (D. Md. 2020) (damage allegations including loss of value of PII are sufficient) (**Ex. G** hereto); *In re Blackbaud, Inc., Cust. Breach Litig.*, 567 F. Supp. 3d 667, 687 (D.S.C. Oct. 19, 2021); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020 WL 2214152, at *15 (S.D. Cal. May 7, 2020) ("Plaintiff[s] . . . [adequately] allege an ascertainable loss in the diminution in value of their [PII]."). Here, Plaintiffs allege a robust market for their stolen PII on the dark web, ¶¶ 295-298, with multiple Plaintiffs having received dark web alerts for their PII. ¶¶ 155, 222, 238. Plaintiffs have concurrently alleged misuse of the stolen PII—further evidence of exfiltration and sale of their PII on the dark web. ¶¶

107, 240, 258. These allegations are sufficient to establish cognizable damages.

### d.  Plaintiffs' Remaining Injuries Also Confer Standing.

Actual misuse of PII stolen in a Breach is sufficient to establish cognizable damages. *Capiau v. Ascendum Machinery, Inc.*, 2024 WL 3747191, at *4 (W.D.N.C. Aug. 9, 2024); *Gordon*, 2025 WL 936415, at *4-6; *In re Blackbaud*, 567 F. Supp. 3d at 687 (collecting cases). Here, Plaintiffs plausibly allege actual misuse of their stolen PII ***shortly after*** the Breach. Plaintiff Shelton experienced actual fraud when an unauthorized third-party made a charge for over $1,000 on her bank account. ¶ 107. Plaintiff Barnette experienced attempted fraud when an unauthorized third-party made an inquiry for a line of credit on his bank account. ¶ 240. Plaintiff Sikora also experienced fraud as a result of a deferment program application. Sikora alleges he received a June 2025 call from an individual claiming to work for Defendant, stating his application had been approved and requesting a $1,200 payment. ¶ 257. Plaintiff Sikora made the payment but Defendant claims it never received it. *Id.*[5]

Moreover, all Plaintiffs experienced a sharp uptick in spam and scam calls and messages after the Breach. ¶¶ 106, 123, 139, 156, 173, 207, 223, 239, 256.

---

[5] Defendant's Declaration (Mot., Ex. A) acknowledges Sikora contacted Defendant 9 days after the Breach's detection to complain of fraud experienced on or around June 7, 2025. *Id.* Defendant attempts to show this fraud took place before the Breach, but this evidence may instead support fraud *caused by* the Breach. *See* ¶ 257. Defendant's Declaration does not foreclose the possibility of illicit infiltration before its detection. This is a fact issue inappropriate for resolution here.

Courts have repeatedly concluded unwanted spam after a data breach establishes Article III standing. *See, e.g.*, *In re Flagstar*, 2024 WL 5659583, at *5.

In addition, Plaintiffs allege suffering a loss of privacy, anxiety, stress, and fear as a result of their PII being exposed in the Breach and the potential for ongoing fraud and identity theft. ¶¶ 12, 109, 125, 141, 159, 176, 209, 225, 242, 260. As this Court has found: "Loss of Privacy is a cognizable injury where the information was viewed by an unauthorized person or publicly disclosed, and a concrete or particularized injury arose from the loss." *In re Flagstar*, 2024 WL 5659583, at *5. Moreover, emotional distress after a data breach is routinely found sufficient, especially when coupled with other harms, to establish Article III standing. *See, e.g.*, *Kingen*, 2023 WL 11965363, at *3 (finding standing when plaintiffs alleged "anxiety and increased concerns for the loss of privacy"); *Bowen*, 2022 WL 4110319, at *6 (averments of mental distress related to plaintiffs' fear of identity theft, nuisance and annoyance of dealing with issues resulting from a data breach is cognizable injury).

Finally, Defendant's argument the Plaintiffs Stucky, Powers, Richardson, Mermeche, Sessoms and Barnette lack standing because they have not alleged attempted misuse is contrary to Sixth Circuit precedent. On the contrary, "[t]here is no need for speculation where Plaintiffs allege their data has already been stolen and is now in the hands of ill-intentioned criminals." *Galaria*, 663 F. App'x at 388.

## II.  Plaintiffs Sufficiently State Their Negligence Claim.

10

To state a claim for negligence under Michigan law, plaintiffs must allege (1) defendant owed them a duty of care, (2) defendant breached that duty, (3) plaintiffs were injured, and (4) defendant's breach caused those injuries. *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688 (Mich. 2005). Courts routinely reject analogous motions seeking dismissal of negligence claims, recognizing "[c]ompanies have a duty to take reasonable precautions" to protect customer PII "due to the reasonably foreseeable risk of danger of a data breach incident." *Lochridge*, 2023 WL 4303577, at *6. Defendant does not contest it owed Plaintiffs a duty to protect their PII or that it breached that duty. Defendant only contests the elements of injury and causation. *See* ECF No. 19, PageID.314. Plaintiffs sufficiently allege numerous actual injuries and cognizable damages caused by the Breach to support their negligence claim.

Michigan requires a showing of a present actual injury for damages. *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921 (Mich. App. 2014). "[D]amages incurred in anticipation of possible future injury rather than in response to present injuries are not cognizable under Michigan law." *Id*. Plaintiffs' injuries are neither speculative nor merely possible future injuries, as the consequences of the Breach have already materialized and are severe. Plaintiffs plainly allege their PII was stolen by cybercriminals, which has been held sufficient for actual injury in Michigan. *See* ¶¶ 43-46 (alleging, with screenshot, cybercriminal group RansomHub claimed credit for the Breach and posted information about the Breach on its dark web site). These

11

allegations are more than sufficient. *See, e.g.*, *Kingen*, 2023 WL 11965363, at *5 (denying dismissal of negligence claim where plaintiffs alleged injured whereby third party stole their PII). Plaintiffs' allegations go well beyond even those in *Kingen*. Here multiple Plaintiffs allege they have already suffered actual fraud and identity theft since the Breach. *See, e.g.*, ¶ 107 (Plaintiff Shelton's unauthorized bank account charge); ¶ 174 (Plaintiff Cromer's unauthorized opening of bank account and attempt to open credit line in her name); ¶ 257 (Sikora). Michigan courts have held allegations like these sufficient to establish Plaintiffs have suffered a present, actual injury. *See Lochridge*, 2023 WL 4303577, at *6 (present, actual injury where PII "already used to fraudulently open an account and apply for a loan").

Defendant's Michigan state cases are readily distinguishable. First, *Doe* held credit monitoring costs were not cognizable damages because the plaintiff failed to allege her PII was viewed online or used for an improper purpose, such as identity theft. *Doe*, 865 N.W.2d at 921. Here, Plaintiffs sufficiently allege their PII was accessed, exfiltrated, and used for identity fraud. *See* ¶¶ 46-47, 55, 107, 174, 257. Second, *Henry* involved dismissal of a negligence claim in a toxic tort case, holding alleged damages (costs of medical monitoring for possible health effects) were not incurred in response to any present, physical injury as the plaintiffs had not yet experienced actual harm. *Henry*, 701 N.W.2d at 688. Unlike *Henry*, Plaintiffs here allege a present injury, including exfiltration, publication on the dark web, and actual

misuse of their PII. *See, e.g.*, ¶¶ 46-47, 155, 223, 238, 257. Third, in *Rakyta v. Munson Healthcare*, 2021 WL 4808339, at *3 (Mich. Ct. App. Oct. 14, 2021), the plaintiff *only* alleged a heightened risk of future harm due to the Breach. Critically, the *Rakyta* plaintiff did not allege the compromised PII was exfiltrated, published on the dark web, or actual misuse. *See Kingen*, 2023 WL 11965363, at *5 (distinguishing *Doe* and *Rakyta* as including only allegations of risk of future harm, and *Doe*—which lacked allegations that a third party viewed plaintiff's PII).[6]

Further, Plaintiffs' allegations of increased spam calls and emails due to the Breach, ¶¶ 139, 156, 173, 207, 223, 239, are cognizable injuries. *See* ¶ 275 ("[s]ocial engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails."); and ¶ 278 (describing process of compiling dossiers on the dark web of data breach victims, known as "Fullz" packages). *See also In re Manpower of Lansing, MI, Inc., Breach Litig.*, No. 1:25-cv-956 (W.D. Mich. Mar. 19, 2026) (**Ex. H** hereto, at p.12) (holding that "[a]ll Plaintiffs allege they have suffered from the increase in spam, so all Plaintiffs have adequately

---

[6] Defendant's cited in-District cases, *Polkowski* and *In re Grede Holdings LLC Data Breach Litig.*, No. 25-cv-10831 (E.D. Mich. Feb. 2026), were cases akin to *Doe*, *Henry*, and *Rakyta*, and so are factually distinct and inapposite here. Given the extent and type of injuries alleged here, this Court should follow *Lochridge* and *Kingen*.

alleged an injury); *Silveira*, 2025 WL 2323911, at *5 (pleading standard met where plaintiff alleged uptick in spam from third-party theft of PII).

Sixth Circuit courts recognize reasonable costs and lost time to mitigate the increased risk of identity theft, as alleged here (¶¶ 69, 82, 95), as cognizable injuries. *See Numotion*, 2025 WL 57712, at *16 (credit monitoring, costs of identity theft protection, and emotional distress are concrete injuries satisfying damages element of negligence); *Bowen*, 2022 WL 4110319, at *6; *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 818 (E.D. Ky. 2019) (lost time damages cognizable for negligence claim). Here, Defendant's Notice Letters instructed Plaintiffs to expend time reviewing records to mitigate harm, and Plaintiffs did so. *See* Compl. at Exs. A & B.

"A claim for mental anguish differs from one for emotional distress and is properly awarded in a tort claim upon sufficient proof of such damages." *Bell v. Mich. Council 25 of Am. Fed'n of State, Cnty., Mun. Emps., AFL-CIO, Loc. 1023*, 2005 WL 356306, at *6 (Mich. Ct. App. Feb. 15, 2005). *Bell* further noted "it matters not whether the source of the mental distress and anguish is the injury itself or the way in which the injury occurred." *Id.* at *7. Thus, Plaintiffs' anxiety and increased concerns for the loss of their privacy and risk of fraud, which resulted from the theft of their PII, ¶¶ 109, 125, 141, 159, 176, 225, 242, 260, are a cognizable injury.

Likewise, Plaintiffs Shelton and Cromer are not required to allege the specific bank account affected by the fraudulent charge was among the information exposed

in the Breach. In the Sixth Circuit, "causation is question for the jury unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 533 (6th Cir. 2014) (quotation marks omitted). As pled, cybercriminals routinely piece together bits and pieces of compromised PII for profit in "Fullz" packages. ¶¶ 277-78. These allegations satisfy the causation element, *Cf. In re Bon Secours Mercy Health Breach Litig.*, 2025 WL 1827804, at *10 (S.D. Ohio July 2, 2025) (plausible causal nexus between unauthorized transactions and data breach despite plaintiffs' financial information not leaked); *In re Flagstar*, 2024 WL 5659583, at *11 (similar). Further, Plaintiffs plausibly allege that spam injuries were caused by the Breach. *See Manpower of Lansing*, at p.14 ("allegations that criminals generally use PII to conduct spam-based attacks or provide PII to scammers using spam communication" sufficient for causation).

### III.   Plaintiffs Sufficiently Allege Their Implied Contract Claim.

Breach of contract requires a contract; a breach of the contract; and damages caused by the breach. *Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059, at *8 (E.D. Mich. Sep. 20, 2023) (**Ex. I** hereto). If no express contract exists, "an implied contract may arise from [parties'] conduct, language, or other circumstances," *Lochridge*, 2023 WL 4303577, at *7, which requires mutual assent and consideration. *Mallory v. City of Detroit*, 449 N.W.2d 115, 118 (Mich. App. 1989).

15

Plaintiffs allege that in exchange for receiving loans and services from Defendant, they were required to, and did, provide their PII to Defendant. ¶¶ 4, 7, 31, 97, 114, 130, 146, 164, 198, 214, 230, 247, 349. The PII transfer constitutes consideration, as the provision of PII was a condition of receiving Defendant's services. By taking possession of Plaintiffs' PII, Plaintiffs allege Defendant implicitly agreed to safeguard and protect it with reasonable and adequate data security. ¶¶ 32, 350-51. Courts, including in data breach cases, have recognized that a company's representations and conduct can support an implied promise to safeguard personal information. *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015) *aff'd*, 739 F. App'x 91 (3d Cir. 2018). Plaintiffs allege Defendant's representations and conduct of requiring, collecting, and using the PII is evidence of Defendant's assent to and understanding of its obligation to safeguard Plaintiffs' PII. ¶¶ 356-57. Defendant breached this obligation by failing to protect PII and by disclosing it to unauthorized third parties. ¶¶ 6, 334, 340, 368.

Plaintiffs also plausibly allege mutual assent. ¶¶ 31-32, 36-37, 39. *See also Auto-Owners Ins. Co. v. Lepp*, 2011 WL 2858788, at *3 (Mich. Ct. App. July 19, 2011) (mutuality of agreement need not be manifested by "direct or explicit words"). Michigan law does not require pleading detailed or technical contractual terms— allegations of conduct demonstrating a meeting of the minds as to the essential obligation is sufficient. Courts routinely find these allegations sufficient to support

16

implied contract claims in data breach cases. *See Hummel*, 2023 WL 6149059, at *11 ("[C]ourts around the country have found the existence of mutual assent even in the absence of clear definitive terms outlining the specific measures a party would take to protect PII."); *Lochridge*, 2023 WL 4303577, at *7 (allegations that defendant required plaintiff to provide PII sufficient to plead mutual assent); *Bowen*, 2022 WL 4110319, at *7 (same); *McKenzie*, 369 F. Supp. 3d at 821 (same). As this District has recognized, it is "difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of [PII] would not imply the recipient's assent to protect the information sufficiently." *Hummel*, 2023 WL 6149059, at *11.

Defendant's contention that no implied contract exists because Plaintiffs fail to point to an "independent source of consideration," ECF No. 19, PageID.315, is incorrect. Plaintiffs do not allege merely that Defendant promised to comply with the terms of their loan/mortgage agreement, or that the PII was ancillary to the mortgage transaction. Rather, Plaintiffs allege that providing their sensitive PII was an essential precondition to receiving Defendant's services, and that Defendant, in exchange for receiving the PII, promised to safeguard it. ¶¶ 32, 349-51. Defendant "made promises and representations to its customers . . . that the PII collected from them in connection with their loan with Defendant would be kept safe and confidential," and Plaintiffs relied on the promises. ¶¶ 36-37. Defendant's acceptance of Plaintiffs' PII, coupled with its affirmative promises to safeguard it,

17

created a binding obligation that Defendant breached. ¶¶ 349-55.

Defendant cites only two data breach cases in which a claim for breach of implied contract was denied, ignoring the plethora of cases with near identical facts upholding implied contract claims in this District and the Sixth Circuit. Defendant's cases rely on traditional confidentiality claims, not failures to implement reasonable cybersecurity safeguards resulting in the mass exposure of PII. In *Polkowski*, this Court found that plaintiff asserted conclusory allegations regarding defendant's failures but did not assert specific examples, such as failure to encrypt as in *Hummel*. 2025 WL 3079358, at *7. Here, like in *Hummel*, Plaintiffs allege that Defendant failed to encrypt their PII. ¶¶ 8, 33 Defendant's reliance on *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. App. 2003) is unavailing. *Belle Isle Grill* applies only where the express contract explicitly covers the specific subject matter at issue and provides a complete remedy for the alleged breach. Defendant points to no provision in the mortgage agreement that addresses cybersecurity safeguards, allocates the risk of breaches, or establishes specific data protection measures. Plaintiffs' alleged implied contract is not duplicative, but is an obligation based on Defendant's own promises to safeguard data. ¶¶ 32, 36.

*Hummel* is directly on point—in *Hummel*, the defendant, like Defendant here, argued that the implied contract claim failed because providing PII did not constitute independent consideration. *Hummel*, 2023 WL 6149059 *Id.* at *9-11. The *Hummel*

18

court found that PII provided in connection with employment adequately pled consideration where plaintiff alleged, in exchange for her PII, defendant implicitly agreed to adequately safeguard it. *Id*. The same analysis applies here. Plaintiffs' receipt of mortgage services does not negate the separate exchange of PII any more than the plaintiff's employment relationship in *Hummel* did.

## IV.   Plaintiffs Sufficiently Allege Their Unjust Enrichment Claim.

Unjust enrichment involves the receipt of a benefit by defendant from plaintiff and an inequity resulting to plaintiff because of defendant's retention of the benefit. *Deschane v. Klug*, 2 N.W.3d 131, 137 (Mich. App. 2022). "The key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 900 N.W.2d 650, 657 (Mich. App. 2017). Here, Plaintiffs allege they directly conferred benefits on Defendant by providing their PII, which "Defendant used and depended on to operate its business and generate revenue." ¶ 372. Plaintiffs provided Defendant their PII, but "[i]nstead of providing a reasonable level of security that would have prevented the hacking incident, Defendant calculated to increase its own profits at the expense of Plaintiffs by utilizing cheaper, ineffective security measures and diverting funds it should have expended . . . to its own pockets instead." ¶¶ 376-77. This causes an inequity where Plaintiffs overpaid for data security Defendant did not provide. These allegations are sufficient for unjust enrichment. *See Herbert v.*

19

*Covenant Med. Ctr. Inc.*, No. 21-044500, Order on Mot. for Summ. Disp. at 7-8 (Saginaw Cnty. Cir. Ct. Feb. 2, 2022) (**Ex. J** hereto) (denying dismissal of unjust enrichment claim in data breach case with similar allegations).[7]

Further, the benefit Defendant received from Plaintiffs' PII was beyond "merely incidental." Plaintiffs allege Defendant's entire business depends on the collection, maintenance, and use of customers' PII: "[w]ithout the required submission of PII, Defendant could not perform its operations, including authorizing loans." ¶ 41. The PII has significant economic value which Defendant extracted from Plaintiffs as a condition of providing mortgage services. When Defendant failed to honor the promises to safeguard the PII, it unjustly retained both the monetary payments Plaintiffs made (which included consideration for data security) and the value derived from the use of Plaintiffs' PII, while providing inadequate protection in return. Here, the independent benefit is the cost savings Defendant achieved by underinvesting in data security while still collecting Plaintiffs' payments and PII.

## V.   Plaintiffs Sufficiently Allege Their Breach of Fiduciary Duty Claim.

A fiduciary relationship is one "in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship." *In re Estate*

---

[7] The argument that Plaintiffs did not directly confer an "independent benefit" (ECF No. 19, PageID.316) fails by mischaracterizing the allegations and misstating the applicable standard. *Landstar*, involved allocation of costs expressly contemplated by a commercial contract. *Landstar*, 900 N.W.2d at 657. Here, Plaintiffs' claim is not based on anything expressly contemplated. *See* ¶¶ 357-62.

20

*of Karmey*, 658 N.W.2d 796, 799 n.2 (Mich. 2003), quoting Black's Law Dictionary (7th ed). Fiduciary relationships can arise "when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first." *Id.* Here, Plaintiffs allege Defendant was in a position of special trust and confidence with respect to their PII, where it required Plaintiffs provide their PII in exchange for receiving loans and mortgage services. ¶¶ 4, 30-31. Defendant, as "a sophisticated loan provider, stands in a position of confidence with respect to its customers" and Plaintiffs "relied on Defendant's promises . . . to implement reasonable practices to keep their sensitive private Information confidential and securely maintained[.]" ¶¶ 37, 384. This reliance created a fiduciary relationship between Plaintiffs and Defendant. *Banker & Brisebois Co. v. Maddox*, 2014 WL 1720285, at *13-15 (Mich. Ct. App. Apr. 29, 2014) ("A fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another.") (citation omitted).

"[S]ociety has a right to expect that [PII] divulged in confidence . . . will be guarded with the utmost care," especially where "defendant is in the best position to protect plaintiffs because it controls who has access to [the PII it holds]." *Bell*, 2005 WL 356306 at *3 (relationship between a union and its members created a fiduciary relationship and a duty to safeguard its member's PII, as organization's existence was for benefit of members). *Bell*'s reasoning is akin to the relationship between a

21

mortgage lender and its customers, as Defendant exists to provide loan and mortgage services to its customers.

As detailed *supra*, Plaintiffs allege a litany of cognizable, present injuries caused by the Breach. Plaintiffs allege that due to Defendant's inadequate cybersecurity, a ransomware group, BlackByte, accessed, stole, and published their PII on the dark web, and as a result Plaintiffs suffered fraudulent bank charges, fraudulent applications for credit lines in Plaintiffs' names, fraudulently opened bank accounts, unauthorized credit inquiries, excessive spam calls, text messages, and emails, and dark web notifications. ¶¶ 46-48, 56, 107, 123, 139, 155, 173-74, 222-23, 239-40, 257-58. The type of PII exposed in the Breach is universally recognized as the type of valuable, sensitive information that creates an objectively reasonable likelihood of future identify theft. *See, e.g.*, *In re Flagstar*, 2024 WL 5659583, at *10 ("when the stolen data includes certain high-risk information . . . the risk of identity theft remains, even as time passes") (citation omitted).

## VI.   Plaintiffs Sufficiently Allege Their CCPA Claim.

The CCPA provides a limited civil cause of action for any "consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a)(1). Under the CCPA, "[a] third party shall not sell or

share personal information about a consumer that has been sold to, or shared with, the third party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out." *Id.* § 1798.115(d).

Under the CCPA, an entity is a business if it "collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information[.]" Cal. Civ. Code § 1798.140(d)(1). Thus, to be a "business" under the CCPA, an entity must: "(1) collect PII and (2) determine why and how ('the purposes and means') the PII should be processed." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 640 (N.D. Cal. 2024) (citation omitted). Plaintiffs successfully allege Defendant's conduct satisfies both elements.

First, the California Plaintiffs allege Defendant collected consumers' personal information as defined by the statue. *See* ¶¶ 4, 31, 36, 403. The CCPA defines "collects" as "buying, renting, gathering, obtaining, receiving, or accessing any personal information pertaining to a consumer by any means. This includes receiving information from the consumer, either actively or passively, or by observing the consumer's behavior." Cal. Civ. Code § 1798.140(f). Here, Defendant collects the personal information of millions of customers and processes that data in connection with the loan services it provides. Given the CCPA's "broad understanding of 'collects,'" courts find this is sufficient to plausibly allege Defendant collects private

23

information. *See Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1327 (N.D. Ga. 2024) (citing *In re Accellion*, 713 F. Supp. 3d at 641).

Second, the California Plaintiffs allege Defendant processes consumers' personal data in its course of business. *See* ¶¶ 4, 31, 36, 403. The CCPA defines "processing" as "any operation or set of operations that are performed on personal information or on sets of personal information, whether or not by automated means." Cal. Civ. Code § 1798.140(y). Using the consumers' PII in order to provide services is sufficient to satisfy the second requirement. *See In re Blackbaud, Inc.*, 2021 WL 3568394, at *5 (D.S.C. Aug. 12, 2021); *see also NextGen*, 742 F. Supp. 3d at 1327. Here, Plaintiffs allege that "as a condition of receiving loans from Defendant, they were and are required to entrust Defendant with their sensitive, non-public PII. Defendant could not perform its operations or provide its revenue-generating services without collecting Plaintiffs' and Class Members' PII." ¶ 4. These are the type of activities courts have found qualify an entity as a "business" under the CCPA. *Compare Karter v. Epiq Sys., Inc.*, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021) (allegations defendant "work[ed] with its clients to determine how it will use consumers' [PII] to provide notice and manage claims and opt-outs" was enough to find plaintiffs plausibly alleged defendant was a business) and *In re Blackbaud*, 2021 WL 3568394, at *4-6, *with In re Accellion*, 713 F. Supp. 3d at 641-42 (finding file transfer site with no input, control, or interaction with plaintiffs' PII was only a

24

service provider). And where "Plaintiffs plead that Defendant disclosed their [PII] without their consent, Plaintiffs state a CCPA claim." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048-49 (N.D. Cal. 2025).

The Breach occurred due to Defendant's failure to implement and maintain reasonable security procedures. *See* ¶¶ 45-58, 75-89.[8] Courts routinely permit CCPA claims at the pleading stage to proceed where "a plaintiff alleges that defendants disclosed plaintiff's [PII] without his consent due to the business's failure to maintain reasonable security practices." *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024); *Ramos v. Wells Fargo Bank, N.A.*, 2023 WL 5310540, at *2 (S.D. Cal. Aug. 17, 2023) (plaintiff stated CCPA claim where "unknown individuals accessed information regarding his savings account as a result of Defendant's failure to properly maintain" it).

 Dated: April 13, 2026

Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com

---

[8] The CCPA claims in the cases Defendant cites were dismissed because they relied on conclusory, "threadbare recitals" of statutory elements. Here, in contrast, Plaintiffs allege cybercriminals infiltrated Defendant's systems, accessed and acquired confidential files with Plaintiffs' sensitive PII, and were able to do so because the PII was maintained unencrypted, without requiring multi-factor authorization, and without monitoring.

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

Gary Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
(866) 252-0878
gklinger@milberg.com

Leanna A. Loginov (admission
forthcoming)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Tel.: (305) 475-2299
lloginov@shamisgentile.com

*Interim Co-Lead Counsel for Plaintiffs
and the Putative Class*

26

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed the foregoing document(s) using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com